[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of a marriage brought the plaintiff husband against the defendant wife. The parties were married in Wilton, Connecticut on April 22, 1984. There are two minor children issue of the marriage, to wit, Amber Croix Skinner born November 20, 1984 and John Patrick Skinner born May 15, 1987. None of the parties has ever been on state or local welfare and is not now. The marriage has broken down irretrievably with no hope of reconciliation.
The plaintiff is presently residing in this state with the intention of remaining here permanently. He was domiciled in this state at the time of the marriage and later returned to this state with the intent of permanently residing here before the filing of this complaint. The defendant is residing in Florida, which was the last residence of the couple before the marriage broke down. The court, therefore, has jurisdiction.
The plaintiff is 38 years of age and the defendant is 41 years of age. The plaintiff graduated from high school and had three years of college. The defendant has both an A.B. and an M.A. degree in early childhood education and has been working as an elementary school teacher for most of the length of the marriage with the exception of the years spent in Westport when she worked in a book store on a part time basis so as to permit her to bear and then care for her two children.
During that stay in Westport, the plaintiff worked as a firefighter for the Town of Westport, a position he held for ten years until they left Westport for the Virgin Islands.
The history of the marriage is one of movement, initially having been married in Wilton, they lived in Westport where both children were born in 1984 and 1987. Two months after the second child was born in 1987, they moved to the Virgin Islands where they stayed until Hurricane Hugo caused them to leave. They then went to Florida where they were living at the time of the final breakup of the marriage.
Throughout the marriage, the defendant has been steadily employed either as a teacher or as a part time clerk in the book store. The plaintiff, on the other hand, was first steadily CT Page 3229 employed as a firefighter, but once they moved to the Virgin Islands, his employment changed to that of working as a waiter in a club at night and doing odd jobs during the day on occasion. At the present time, the defendant is working as a school teacher in Florida and the plaintiff is working as an appraiser-trainee for a real estate agency owned by his cousin, a Mr. Mendez. Just before this, he was working as a bus monitor for the Westport School System earning $8.00 an hour.
Both parties appear to be in good health as do the children.
The issues to be decided, in addition to the dissolution of the marriage include the custody and support of the two minor children and the disposition of a piece of property in their joint names in the Virgin Islands and visitation.
To arrive at a decision on all of these elements, the court has considered the provisions set forth in General Statutes46b-82 and makes the following findings and orders:
1. The cause of the breakdown of the marriage appears to be the result of the plaintiff's conduct in constantly partying two or three nights a week against the express wishes of the defendant so that he appears never to have made a commitment to the marriage. That conduct resulted in the defendant seeking another relationship, which she found. Upon her telling the plaintiff that she wished to date another man and live out of the home with the children or without them, he became enraged and, as a result of his rage, left the house with the two children, driving them eventually to Westport where they presently live.
 The court finds, therefore, that the breakdown of the marriage was caused as much by the conduct of the plaintiff as that of the defendant so this is a no fault divorce.
2. CUSTODY: The best interests of the children are the grounds on which their custody must be determined. It appears that they have adapted well in their Great Aunt Netty's house where they live with the plaintiff. They appear to get along with their father, with their grandparents, their aunt and also with their peers in school and with their teachers.
Both parents appear to the court to be more concerned about CT Page 3230 their own interests than the interests of the children. The plaintiff's action in abruptly removing the children from the home; the defendant's action in deciding to leave the house with or without the children and advising her husband of her intention but also in making no effort to explain what she wanted to do or what she was going to do for the children. Moreover, even now when the plaintiff tells of his activities with the children, it is the presence of Aunt Netty and her asking only $60 a week from them that makes these activities possible. The plaintiff seems to be content to continue in this way without trying to get a better paying job in which he would be fully responsible for his children.
 On the other hand, the defendant made no effort to see the children or obtain either custody or visitation until almost a year after they had left. In fact, her first motion was not for custody but for transferring title to the car she was driving.
 Consequently, the court finds that the plaintiff shall have sole custody of both children with liberal visitation by the defendant to the extent she can afford to do so. In exercising visitation the defendant must give the plaintiff a week's notice of her intention to do so.
 The defendant shall also have the right to telephone the children at least once every two days at 8:00 p.m., and the plaintiff is ordered to have the children available at that time for that purpose. Any change in this time must be by mutual agreement.
3. SUPPORT: Because the defendant lives in Florida, the cost of transportation is a big factor in determining the number of visits she can make. This also is a factor in determining how much support she can pay. The court will, therefore, not apply the Child Support Guidelines because of the cost for visitation but will continue the present pendente lite order of $75 a week to be paid by the defendant to the plaintiff for the support of the children.
4. ALIMONY: Both parties have waived alimony so there is no order of alimony.
5. DISTRIBUTION OF PROPERTY: The property in the Virgin Islands was purchased during the marriage primarily from the CT Page 3231 plaintiff's funds, but the mortgage used to buy it has been kept up in recent years by the defendant. Given the fact that the plaintiff took items belonging both to the marriage and to the defendant without her permission and has since sold some of those items and treated all of them as his own, the court finds that this property should be sold and the proceeds divided equally between them.
 The parties are therefore ordered to make whatever arrangements are necessary to carry this into effect.
 It may be that upon receipt of some of the proceeds the defendant would have an opportunity to visit the children more than she has.
 Until the Virgin Island property is sold, the parties shall share equally in the cost of the encumbrance on that property and of any property taxes and other costs.
6. PARENT EDUCATION: Since the defendant lives in Florida, it would not be possible for her to attend the parenting education program required by P.A. 93-319. However, the plaintiff is in a position to do so, and he is ordered to do so.
7. WAGE EXECUTION: In view of the defendant's residence in Florida, there will be no wage execution.
8. MEDICAL INSURANCE: The defendant shall continue the medical and dental insurance available to her through her employment for the benefit of the minor children, and she shall maintain that as long as it is available. The parties shall share equally in the cost of unreimbursed medical or dental expenses of the minor children.
 The plaintiff shall not incur expenses in excess of $300.00 for medical or dental care for the minor children which would not be covered by insurance without the permission of the other party except in the event of an emergency.
9. LIFE INSURANCE: Each party shall maintain or obtain a policy of insurance on his or her life at his or her own cost with a minimum benefit payable of $15,000 naming the children as irrevocable beneficiaries on said policies. Failure to obtain the policies will be excused if the applicant is CT Page 3232 determined to be uninsurable.
10. TAX DEDUCTIONS: The plaintiff shall claim John Patrick as a deduction on his income tax, both for federal and state tax purposes, and the defendant shall claim Amber as a deduction or exemption on her federal and/or state income tax.
11. MOTOR VEHICLES: Each party shall keep the motor vehicle currently in his or her possession, and hold the other harmless from any claim arising out of the payment of or ownership of their respective motor vehicles. The parties will sign whatever documents are necessary to effectuate the provisions of this paragraph.
12. ATTORNEYS' FEES: Each party shall pay his or her own attorney's fees and shall share equally in the attorney fees for the minor children.
13. JOINT DEBTS: The defendant mother will continue to make payments on the joint Mastercard currently having a balance of approximately $1,472 until the balance due is $1,000. Thereafter, the plaintiff shall make all of the remainder payments on said joint Mastercard until it is paid in full, and the plaintiff shall hold the defendant harmless from any claims arising out of the payment for the remainder of the Mastercard debt.
14. COIN COLLECTION: The coin collection which is presently in the possession of the defendant's attorney may be turned over to the defendant within thirty (30) days of the date of this decision.
15. OTHER PERSONAL PROPERTY: The plaintiff shall return to the defendant all of her personal items, clothing or books currently in his possession as well as jewelry, coins, coin collections and any other items stored in the Westport Bank Trust safety deposit box currently being held by the defendant's attorney shall become the exclusive property of the defendant and be turned over to her.
16. OTHER ASSETS: Each party shall keep any other assets located on his or her financial affidavit without any claim or demand by the other including checking and/or savings accounts, annuity plans or any pension plan or tax deferred savings plan. CT Page 3233
17. NAME CHANGE: The maiden name of Karen Keim is hereby restored to the defendant.
It is so ordered.
MARGARET C. DRISCOLL STATE TRIAL REFEREE